How do you distinguish U.S. v. Grovo, which appears to say that once you identify something as a sexual subject, you have advertised and distributed? Your Honor, that discussion is all within the framework of that different network, the Kazaa server, and that is simply different in our view from Giga Tribe, yes. But in that case in Grovo, the individuals who were there, once they became accepted members of that forum, were all able indiscriminately to view the materials that were available. The distinction that we see here, Your Honor, is that with the Giga Tribe venue, there has to be a further step taken in order for another individual to gain access to the pornographic files, and that is that that individual has to request and become a friend of the defendant in order to gain access, and that that is different from Grovo, which is why we just – the Court does make the comment Your Honor just referenced, but it makes it in the context of a very different setup, and that's the reason that we don't consider that to control here. Why is the distinction relevant? The distinction being the way that Giga Tribe operates, that Giga Tribe, if I may refresh for the Court's recollection, requires an individual to become first a member of that venue. You know, you're explaining once again the distinction. I ask why. Why does this distinction make a difference? Because Your Honor, I apologize, I misunderstood Your Honor. Because it affects whether or not it should be interpreted as advertising. Why? Why does the fact that you have to sign up? Is this sort of like becoming a member of a buying club? You know, you have to become a member, you know. If Costco advertises, you have to go in and become a member before you can shop. Does that make the advertising less advertising? No, Your Honor, it doesn't, and there are a lot of other... So why does this extra step, the signing up step, make a difference? Because of the language that's used in these four themselves and in the language that was used during the trial, which is people are talking, and even in the briefs, the parties are talking about file sharing. And what I think the confusion and the collision occurs is that we don't have any definition for advertising in this specific context. Certainly this jury didn't receive one, and we are skating back and forth between this hyper-technical, if you may, if I may, definition of advertising contrasted with what is probably the lay juror's interpretation of advertising with the difference in these electronic fora and what they consider to be file sharing. And that file sharing, which the parties use, including the government in its briefing, is just simply in what this jury received, neither one nor the other. So it's betwixt and between, in a sense, if you will. Well, don't both of the cases, counsel, both Grovo and this case, involve file sharing systems that allowed individuals to communicate to subsets of the population as a whole? And didn't both cases say that in that situation, if you advertise to a subset of the population, that's sufficient to be an advertisement? Your Honor is correct. And so Grovo does govern this situation because it says that you can advertise to a subset of the general population, doesn't it? That's where I would differ with, Your Honor. The distinction that we see there is that in Grovo, there is no further action necessary by the defendant to enable this access. Grovo had, in that case, the system did involve separate levels of access. There were like three or four different levels of access that members could have. There is a messaging board set up where anybody, presumably, the record such as it is, at least in the circuit's decision there, suggests anyone who gains access to that level then is able to just indiscriminately view whatever files those individuals are sharing. Whereas here, the defendant appellant's actions, he joined GigaTribe, he made files available from his computer, but he didn't actively make them available to an individual until that individual gained his friend status. So that's where we see the distinction, Your Honor. The Grovo decision is talking about an open venue. For example, I'm hesitant even to go back into the analogies. I know the court has already been presented with so many from both sides. And I think all of the analogies slightly miss the mark because none of the analogies hits right on the head this terminology that's in use in these electronic venues, which is the sharing, the file sharing. We've instead in the statute adopted a term, advertising, which is not a hyper-technical term. It's a layperson's term. So I think what we've created here is a high propensity or high likelihood for confusion from lay jurors when they hear that word advertising. And the court here gave no specific instructions on that, despite the defendants requesting it. And that's the reason we have this error, what we perceive to be the error. And none of the other cases that have been cited come straight to this particular point. Both cases involved a situation where the advertisement was available to a subset of the population. Isn't that right? Both Grovo and this case? In this case, I have to hesitate, Your Honor, because Your Honor is suggesting to me what the court's opinion says in Grovo, which is that everybody now has access to it. But it isn't, in fact, everybody in the defendant's instance. It is only... That's not what Grovo said. It said that you could be an advertisement even if it was to a subset of the population, which is the same situation that we have in this case. But the reason that Grovo could say that, Your Honor, is because it had already set up the fact pattern. It had already made in its decision clear that it was addressing this open environment where all people who were in that setting did, in fact, have access. So that is why, Your Honor, because that definition, that clarification is already provided in the opinion, it seems reasoned and appropriate for the court to then have gone on to make its findings. In the Giga Tribe, in this case, in the Giga Tribe system, there were certain things that members of the public could see, correct? They could see the avatar, for example? They could see the avatar. That is correct. And the avatar was a picture of a child in underwear, correct? That is correct. And that avatar was part of what the government said was an advertisement, correct? That is the government's interpretation, yes. What about the thumbnail files? Could those not also be seen by certain members who participated in Giga Tribe? Depends upon the steps that that other individual took and which folder one's talking about. Because there are different folders that the defendant was publishing and some were access restricted and others were not. So those that were not access restricted could be seen by a person that signed up for Giga Tribe? Yes, correct, Your Honor. And those thumbnail images were also identified as advertisements by the government, correct? That's the government's interpretation. We reject that, but that is the government's interpretation. What position do you have about whether or not the government proved in this case, whether or not they proved that these advertisements actually were seeking or offering to receive or distribute child pornography or display child pornography or produce child pornography? What is your position on that point? Do you... They've failed in their proof on that. We have no information as to the actual identity of the users who are receiving these files. There is discussion elsewhere in the case law about how these other individuals are neither family members nor close friends, and that's very likely the case here. It's reasonable perhaps for one to assume that, but this is a criminal matter and assumptions are not really warranted, especially to that point. And it's a failure of proof from the government to show who any of these actual users are. We don't even know who the original entity was that allowed the government to start its access. I'm not asking you about that. I'm asking you, are you waiving the argument that the evidence was insufficient on this question of whether or not they had proven that these ads were seeking and offering in and of themselves, these things that they're calling advertisements, whether they were seeking and offering to receive, distribute, or display child pornography? Are you waiving that? Because we asked you to brief that, and you did not raise that, so what is your position on that? We're not waiving that, Your Honor. Then explain to me how the evidence was insufficient. I have to come back to the core point raised in the opening brief, which is there's this additional barrier erected around the defendant's participation in GigaTribe, and that it isn't the casual bystander who gets access to these files. It has to be the individual who goes the additional hurdle and gets friendship from the defendant in order to acquire that. Okay. Let me just try one more time. I'm not asking you about the level of access that the people had, not asking you about the level of access. I'm asking you about the nature of the advertisements. Here the advertisements involve the particular image that the fellow had for his avatar. That was one. The thumbnail images that were available, and then the labels or names for those. That's what they said the advertisement was. I'm asking you whether or not you can make a point that the evidence was insufficient in showing that those advertisements were seeking an offering to receive or distribute child pornography. That's my question. How is the evidence insufficient? I am trying to answer, Your Honor, and I'm sorry, I apologize, I must be stumbling. Our position is that's not advertising. We come back to it. I get hung up on the definition of advertising as it's used in Your Honor's question and as it's used in this fact pattern overall. Whether that constitutes, the government clearly contends that's advertising, and if the jury had been given a specific instruction, perhaps so defining, I would probably have to be in a different position here, but that isn't what happened. So I'm sorry, Your Honor, I sense the Court's frustrated with my answer, but I simply can't go further than to say, I come back to this, what I perceive, we are positioned before the Court, is the crucial difference in this particular forum from the rest of the decisions and even the other decision that deals with GigaTribe doesn't address this. All right, you can move on. I am happy to take any further questions, but otherwise I would reserve any remaining time. Thank you, Your Honor. Good morning, Your Honors. May it please the Court, Bram Alden for the United States. The first question that Judge Reinhart asked is critical. Is Grovo distinguishable? The answer is, it's not. That case, just like this case, involved a closed network that this Court described as a closed network, not an open network the way the defendant is now characterizing it, that had 40 to 45 members who were there only through invitation. They had to be invited, and then they joined. That is exactly what happened here. The defendant established his own network, and I think that that goes next to Judge Kaczynski's question, which is, why is any distinction relevant? It's not. The fact that the defendant built the network himself versus someone else building the network for him doesn't make a difference. Once the network is established, it was a closed community to which all files were available. The defendant characterizes his sharing as non-indiscriminate. That's not true. However, once anyone was connected with the defendant on his GigaTribe network, and he had 100 contacts, any of those people at the same time could see any of the files that he was offering. And Judge Berg got into the question of, what could they see? They could see in his Group 1 folder thumbnails of child pornography, and they could see in his Groups 1, 2, 3, 4, 5 folders descriptions of child pornography in the file names. Some of those folders were password protected, but the defendant's password was in his username so that anyone could see it readily. And for those people who might have missed it in his username or on his screen page, they emailed him, as the record shows, and their first communication to him was, what is your password? At which point, he supplied it. Based on those facts, Grovo is not at all distinguishable. It is controlling. And as the Court has pointed out — Counsel, since you're saying that it's controlling, in Grovo, didn't the government have more proof regarding an expression of a communication by the defendants that one could call seeking or offering to distribute or receive or display child pornography than we have here? Here we have, you're talking about pictures and file names and an avatar. That's what you're saying the advertisements are. Let's assume that Grovo and some other cases say that they meet the definition of what an advertisement is, even if it's to a closed network. That's your position on that, correct? Let's assume that that's not wrong, although I know that that's part of what's being debated here. But how do those images, file names, and just the avatar communicate some kind of a seeking and desiring and offering to receive, distribute, display child pornography? Where is the communication there? So the communication is inherent in the network and what the defendant is doing on that network. GigaTribe, as was explained at the trial in this case, is a file sharing network. That is its only purpose. Its only purpose is for people to seek, offer, and exchange files. So when you post a file on GigaTribe, it is as if I was going to the farmer's market. The only purpose of the farmer's market is for me to buy goods and for someone to sell them. They don't need to say to me specifically at their booth, I'm selling you corn, I'm selling you strawberries, I'm selling you donuts. So are you saying, for instance, that if there were a criminal statute that made it a crime with an additional 15-year sentence for advertising tomatoes and advertising by doing so by seeking and offering to receive or distribute tomatoes, that just by putting a crate of tomatoes out at the farmer's market, you are guilty of advertising? If that withstood challenge under the First Amendment, under any other constitutional right, and in fact there have been cases challenging child pornography sharing under the First Amendment and the Supreme Court has held that virtual child pornography does not qualify because it is protected, I would imagine that speech about tomatoes would also be protected because it is not contraband material. Don't talk about, that's not what we're talking about. You know that. Let's assume tomatoes are contraband also. In that hypothetical, yes. Just by putting them out, that constitutes an advertisement? If that is inherent in the forum that you are placing your goods, and if by context somebody can determine that what you are doing is seeking or offering, then yes, that would qualify as an advertisement. I would like to address Your Honor's point about waiver as well that was raised with there is any argument as to seeking or offering, that argument has been waived because defendant cannot now come in at oral argument and attempt to raise an argument that this court specifically asked the parties to address in their supplemental briefs and defendant chose not to do so. To the extent the court still is considering it, that also was resolved by Grovo. Grovo said that posting a link was an advertisement seeking or offering child pornography on a message board. Grovo said that one defendant in that case was seeking child pornography when he posted a message on the board that said, does anyone have child pornography from this studio? And another defendant, without actually saying anything about does anyone want, and as this court has pointed out, there's no magic words, but without actually saying does anyone want child pornography. He posted a link or information about a specific child pornography studio, and this court held that in so doing, he was inherently seeking or offering, in fact, that was offering child pornography. Don't you agree that in the Grovo case, and you're talking about defendant Peterson, correct? Yes. Didn't he do more than we have here? Wasn't that a thread, a conversation thread where he was including words such as, quote, hot L.S. vid, or L.S. at its best, L.S. being the studio that made the child pornography? Yes. Isn't that more than we have here? I would say that's less than we have here. What the defendant did was post, for example, a file that was named, cute 14-year-old boy Sean jerks off hot. That is a lot more than just a studio name. In fact, many of his videos had those sorts of descriptions that from their very nature, anyone who saw the title alone would know full well that was child pornography. Moreover, he didn't just post words. He posted images, thumbnails, small photographs of the child pornography that he was seeking or offering. That is more than what happened in Grovo, in fact. So what defendant did is clearly illegal, and his argument that it was not advertising is squarely foreclosed by Grovo. Would it be possible to distribute without advertising? I think it would, Your Honor, and I think it would be difficult on a peer-to-peer file sharing network, and for good reason. We don't want people to easily distribute child pornography, but I would say, Judge If, for example, your neighbor was having a conversation with you and said, do you have child pornography files, and you said to your neighbor, go on my page that is not through a forum known to be used for child pornography, and on that page you will see files number one, two, three, and four, and you can download them there. At that point, you haven't expressed to the world what you are offering by labeling the what they are, and you haven't actually gone out and marketed because someone else has come and solicited from you. It would also be possible if then your neighbor went to his friends and said, you know, I know somebody who happens to have child pornography on their page, and you can get it there. It's files one, two, three, four. That's not advertising by the person who posted those files because you haven't communicated to an audience what you are actually offering or seeking. You haven't described your product. So I do believe it would be possible. I don't believe it would be easy, and I think that that's the point. Congress wanted this to be difficult because child pornography should not be advertised or distributed. As this Court explained in its minors' decision, the prohibition on advertising child pornography is extremely important. In fact, the words that this Court used was that the distribution of child pornography feeds an industry that causes physiological, emotional, and mental trauma to the child victims, and the advertising of child pornography threatens to cause grave harm to society and encourages production and distribution of material that is created by abusing children. Well, I'm sure they intended to, you know, nobody likes child pornography. I'm sure they intended to punish it. I'm sure it's bad, but to say that Congress really intended to say that every time you distribute, you're also advertising, and therefore you should get separate sentences for both, I doubt that anybody in Congress really thought about that. I would say, Your Honor, that the legislative history does point out that they did want the advertising prohibition to cover computer distribution, even though computers were in their infancy when the statute was enacted. And I would also say that the minors' case that I was just quoting from was a case decided under the Eighth Amendment to determine whether that 15-year mandatory minimum constituted cruel and unusual punishment, and this Court said that it did not. So although it is a severe penalty, there's no question, and although it is difficult to distribute without advertising, I don't think this Court should be particularly concerned about a penalty that is not unconstitutional under the Eighth Amendment and that is used to penalize a form of conduct that is illegal both when you distribute and when you advertise. It is not something that is First Amendment-protected speech. It is not something that the Court should worry about, is this prohibition going to criminalize something that's otherwise legal, because the distribution itself is illegal. But shouldn't there be distinguishing acts, distinguishing conduct? Yes. That makes advertising a separate offense deserving of a 15-year mandatory minimum. And I believe there is. Must that be consecutive, or is it just 15-year mandatory minimum? It's just a mandatory minimum. Here he was convicted of ploth, and it was. But aren't you simply saying that if you post images in a file-sharing network that others can see that that, without any other act whatsoever in terms of trying to get customers or describing it in a way that makes people want to go to it apart from its file name itself, you're saying that that in and of itself should allow just sort of an inference of guilt as to advertising in the sense of seeking and offering to receive and distribute. Aren't you just saying someone can get convicted on an inference that you think is a fair inference? I think that this case raises a lot of facts that support that inference and therefore goes beyond what was necessary. In general, as a proposition, would I agree with that? I would agree with that. But I think that here, the facts before the Court are that the defendant did a lot of things to indicate to other users that he was seeking or offering. But those things are not the advertisement. Those things are statements that he made. You have to have an advertisement itself that seeks or offers to receive or distribute. The fact that he may have told people he was seeking and offering, that's not the advertisement, correct? So, I think that's part of the marketing. If you're talking about the one-on-one communications that defendant had with other users, that is like my saying to colleagues at work, I make delicious donuts and I have great donuts and I bake them all the time. And then a few days later, bringing in donuts and saying, do you want a donut? Now, what happened before was not that. If I can stop you for a moment. There's no place in this record that we have a statement like that, do you want some child pornography by this defendant on GigaTribe. Do we? If we do, I'd like to know where that is. We do. We have one-on-one chat. No, I said to the people, it has to be an advertisement. So in other words, to the subset group as a whole, not a one-on-one. Yes. So, if the question is, did he communicate to the hundred contacts collectively? Do you want child pornography? No. He did not use those express words. What he did do, though, was he had the avatar that Your Honor mentioned to indicate his sexual desires and that was, there was expert testimony at trial that that is what the avatar is used for. In addition to that avatar, he had the file names and he had preview thumbnail images of child pornography to indicate what he was offering. He in addition to that had the chats that were one-on-one, not collective with his entire friend network, but there were also two reasonable inferences that the jury could have drawn and that must be drawn in the appellate posture, which are that the size of a collection, half a million child pornography files, likely indicates that somebody has been seeking or offering and advertising child pornography because you don't have half a million files unless you're engaged in the exchange through seeking and offering. The fact that he also paid $40 a year so that he could increase the size of his network of contacts through GigaTribe also tends to show, and I don't think this alone would be enough, but it's a reasonable inference that somebody doesn't do that unless they are trying to engage in the exchange. So I think collectively all of those facts prove that here what defendant did was amply enough to support the advertising conviction. And unless the Court has further questions. Yes, Your Honor. I just thought out of curiosity you started to say there were two 15-year crimes, but they were imposed, was it concurrently or consecutively? So the advertising conviction is the 15-year mandatory minimum. There's also a mandatory minimum for the distribution offense. Those are imposed concurrently. They are not consecutive. Thank you. Okay.  And the only – I apologize, Your Honors. The only other point I did want to make was that there was a specific jury instruction on advertising, which I believe defense counsel represented there was not, but there was. And in this case, the Court did instruct the jury that a one-on-one communication would not itself have sufficed, nor would an e-mail communication. Thank you, Justice. Thank you. If the Court understood me to say that there was no instruction on advertising given, then I apologize to the Court. My recollection was that what I explained was the defense asked for a particular and far more defined instruction, and that is what the district court declined to give. And as I listen to government counsel doing his argument here, I see again we're going through analogies. We're talking about marketing. We're talking about tomatoes in a farmer's market, all of these various and sundry situations. And I think what's causing all of this confusion is my original point, that we're using a very specific term, advertising, in a very punitive criminal context, without giving the jury true guidance. I agree with Your Honor, Judge Reinhart, that Congress has a very clear intent here. Nobody's disputing that child pornography is a reprehensible crime, that many people are victimized by it. But if Congress's intent is to focus on this higher level of culpability, I think we're failing in terms of providing the guidance to the jurors who need to have that in order to make the findings to sustain a verdict like this. This claim does not go to the distribution counts. The client sustained those counts. This claim doesn't. This is a guidance issue? This is an instruction argument? I'm trying to. I thought we were talking about sufficiency. We are talking about sufficiency. And the reason that, because the government says, well, no reason. Why are you getting into guidance and instructions? Because of how to be reasonable. If there's insufficient evidence, if there's insufficient evidence, it doesn't matter how detailed the instructions are to the jury. Your Honor, my response was to the government's contention that only a reasonable jury could make this finding. And I suggest that that's not true. It sounded to me like you said, well, if they had just gotten better guidance, they could have. No, I'm suggesting that our problem, the inherent problem here, is that presented by the language that Congress chose to use when it wrote this statute, defining it with advertising, a term in common usage that lay jurors have extensive experience and understanding with, but that doesn't reconcile with these facts  And that's why, Your Honor, we contend that it is an insufficiency of the evidence argument. This record doesn't justify this conviction for this defendant. And I see my time's expired. I will thank the Court. Thank you, counsel. Thank you both. The case is adjourned. You will be submitted.
judges: Reinhardt, Kozinski, Berg